ELISHA ATKINS *vs.* EQUITABLE LIFE ASSURANCE SOCIETY
OF THE UNITED STATES.

Suffolk.   Jan. 16. — March 3, 1882.   LORD, FIELD & C. ALLEN, JJ., absent.

An insurance company issued a paid-up policy of insurance on the life of F., payable either to F., his executors, administrators or assigns, on a certain day, or, should F. die before that day, to F.'s wife. Before the policy was payable, F. became bankrupt, and the insurance company, wishing to procure the surrender · of the policy, authorized B., its agent, to purchase it for $3000. The assignees in bankruptcy of F. assigned their interest in the policy to A., and A. assigned it to B., the latter giving A. a receipt for the policy signed by him as "manager," stating that it was surrendered for cash value. F.'s wife assigned her interest to the company, and F. executed a similar assignment. B. subsequently obtained an assignment of the policy to himself from F.'s wife. The papers were thus drawn at the request of B., who said that they were necessary to perfect the title. On these assignments being received, the company sent to B. a check for $3000, and B. paid A. $2000. In an action by A. against the company, to recover the remaining $1000, the jury found that B. acted in these transactions as the agent of the defendant, and not as the agent of A. or of F.'s wife. *Held*, that the defendant was liable for B.'s acts ; and that, although A.'s interest in the policy was less than $3000, he could maintain the action in his own name for his own benefit and for the benefit of F.'s wife.

CONTRACT for money had and received, with a count alleging
that the defendant issued a policy of insurance on the life of
Warren Fisher ; that the policy was assigned to the plaintiff,
who became the legal holder thereof, with the consent of the
defendant ; that the defendant agreed with the plaintiff that, in
consideration of the plaintiff's surrendering the policy, the defend-
ant would pay the plaintiff the value thereof ; that the plaintiff
thereupon surrendered the policy to the defendant, but the de-
fendant refused to pay the plaintiff the value thereof. The
answer admitted the issuing of a policy on the life of Fisher ;
alleged that Fisher became a bankrupt ; that his assignees in
bankruptcy assigned their interest in the policy to the plaintiff,
who assigned it to one Henry T. Blodget ; that the wife of
Fisher assigned her interest in the policy to Blodget ; that the
defendant had paid Blodget the full value of the policy ; and
that Blodget had paid the plaintiff more than the value of the
plaintiff's interest in the policy. Trial in the Superior Court,
before *Pitman*, J., who allowed a bill of exceptions in substance
as follows :

On March 13, 1872, the defendant, a corporation organized under the laws of the State of New York, issued to Warren Fisher a paid-up policy of insurance in the sum of $4000 upon his life, which sum it agreed to pay "at their office in the city of New York, either to the said Warren Fisher, his executors, administrators or assigns, on the thirtieth day of January in the year eighteen hundred and eighty-six; or, should the same person whose life is hereby assured as above die before, then, in sixty days after due notice and satisfactory proof of the death, to Virginia E., wife of the said Warren Fisher, her executors, administrators or assigns."

On May 5, 1874, Warren Fisher, upon his own petition, was adjudged a bankrupt, and on June 18, 1874, M. F. Dickinson, Jr. and R. M. Morse, Jr. were duly elected and qualified as his assignees. Among other assets of his estate, they received from Warren Fisher the above-named policy, and they held the same as belonging to his estate until December 26, 1879.

Before December 23, 1879, the defendant became desirous of procuring the surrender of this policy; and, on said December 23, wrote to H. T. Blodget, its agent in Boston, offering to give $3000 for the policy, if the same could be purchased within thirty days, and stating that according to its records Warren Fisher and his wife were alone interested in the policy, but that the agent must satisfy himself that there was no other claim upon it before purchasing.

After the receipt of this letter by Blodget on December 24, steps were taken to procure the purchase of said policy. This was finally accomplished; and, on December 26, the assignees in bankruptcy transferred all their interest in the policy, with certain other assets of Warren Fisher, to the plaintiff, and received from him therefor the sum of $2000.

On the same day the plaintiff made an assignment of all his interest in the policy, and of all money payable under the same, to Blodget. The plaintiff received from Blodget, at the time of the delivery to him of the policy and the above assignments, the following receipt: "December 26, 1879. Received of Elisha Atkins, policy number B, 27,646, on the life of Warren Fisher; said policy forwarded to the Equitable Life Assurance

Society. Duly surrendered for cash value. H. T. Blodget, Manager."

On the same day, Virginia E. Fisher executed an assignment under seal, of which the following is a copy: "For value received, to me in hand paid, and for other valuable considerations, the receipt of which is hereby acknowledged, I hereby request the Equitable Life Assurance Society of the United States to give the surrender value of, and to purchase, policy No. B, 27,646, issued by the said society, and all money which may be payable under the same. And I hereby surrender the said policy, and assign, transfer and set over all my right, title and interest thereto to said society." Warren Fisher and Blodget also assigned their interests in the policy to the defendant; and Blodget signed a receipt for $3000, in full of all claims under the policy.

The original policy, and the foregoing assignments and receipt, were forwarded to the home office in New York, with a letter, signed by Blodget, in which he recited the assignments, stated that the assignment from the plaintiff to himself was to enable him to collect a debt due him from Warren Fisher, and requested a check payable to his order. This letter had the following heading: "The Equitable Life Assurance Society, 120 Broadway, New York. H. T. Blodget, manager. N. Warren, cashier."

On December 27, the defendant drew and sent to Blodget, by mail, a check for $3000, payable to the order of Virginia E. Fisher and H. T. Blodget. On December 29, Blodget returned this check to the defendant in a letter having a similar heading to that above described, and requested a check payable to his own order. With the check returned, he sent an assignment of the policy and of all money payable under the same, from Mrs. Fisher to himself. The check returned to the defendant was altered in New York by the erasure of the names of Virginia E. Fisher and H. T. Blodget, and by the insertion of the name of H. T. Blodget alone, and was returned to Blodget on December 30, and was received by him on the following day.

Blodget testified that accompanying this altered check was a letter explaining the alteration; that he deposited this check for $3000 in the National Bank of Redemption on December

31, 1879, and on January 2, 1880, he paid to the plaintiff the sum of $2000 by his own personal check on said bank.

Fisher testified that the plaintiff took the assignment and advanced the money to the assignees solely for his (Fisher's) benefit, and that he was the beneficial party in interest; that, after this purchase from the assignees, it was necessary to perfect the title, and that the assignments put in evidence were executed accordingly; that Blodget said it could not be corrected otherwise; that then the papers were prepared and delivered to Blodget, who gave the receipt above described to the plaintiff; that they had no knowledge, before the collection of the money, of any purpose of Blodget to retain any part thereof.

The defendant produced as a witness one Sydney M. Hedges, a life-insurance actuary, who testified that he was familiar with this kind of policy; that he had examined this policy and was familiar with the provisions contained therein; that the value of said policy on December 26, 1879, under the laws of New York, did not exceed the sum of $2650.84, and of this sum $817 represented the interest of Virginia E. Fisher, and $1833.84 the interest of the plaintiff; but assuming that the parties had agreed on the cash surrender value of the policy as $3000, then the interest of Virginia E. Fisher would be $924.61, and the interest of the plaintiff $2075.39. To this testimony there was no objection, and the plaintiff offered no evidence to control these estimates.

The plaintiff's counsel stated that he would accept without question the amount intimated by the company ($3000), as the fair value of the policy on December 26, 1879.

There was no evidence tending to show that the receipt, dated December 26, 1879, signed by Blodget as manager, and delivered to the plaintiff, ever came to the knowledge of the officers of the company in New York. Nor was there any evidence that the plaintiff or Warren Fisher ever saw the correspondence between Blodget and the defendant. The letters from the defendant to Blodget relating to the surrender were called for, but not produced, at the trial.

It appeared in evidence that the only authority of Blodget to represent the defendant in Boston, except as contained in the

letter of the defendant of December 23, was by a written contract, wherein his duties were defined and limited to those of a canvasser for life insurance, and his compensation fixed therefor, and it was specially set out in said contract as follows: "the authority of said agent shall extend no further than is above stated; he shall not make, alter or discharge any contract, nor waive forfeitures, or receive any moneys due or to become due to said society, except on receipt signed by some officer of said society or other authority, and shall receive no further remuneration for any services than as above stated."

The defendant asked the judge to instruct the jury as follows: "1. The contract set out in the plaintiff's declaration payable by the defendant on January 30, 1886, 'at their office in the city of New York,' is a New York contract, and is to be interpreted by the law of the State of New York. 2. By the terms of said contract and the undisputed testimony of the expert Hedges, Virginia E. Fisher, wife of Warren Fisher, had, on December 26, 1879, a valuable interest in said policy, equivalent to $817 as a minimum valuation, or $924.61 as a maximum valuation. 3. The only interest in said policy which passed to the assignees of the estate of Warren Fisher in bankruptcy, and from them to the plaintiff, was the interest of Warren Fisher, as provided in said policy. 4. By the terms of said contract, and the uncontradicted testimony of the expert Hedges, the interest that the plaintiff had in this policy on December 26, 1879, when he executed the assignment to Blodget, did not exceed the sum of $2075.39 as a maximum valuation, or $1833.84 as a minimum valuation. 5. If the jury find that the plaintiff purchased said policy of the assignees of said Fisher in bankruptcy, under an arrangement with said Fisher, by the terms of which the plaintiff was to advance the sum of $2000, said Fisher paying him interest therefor from December 26, 1879; that said sum of $2000 was returned to the plaintiff, January 2, 1880; and that said Fisher has paid to the plaintiff interest for the use of said $2000; and that said Atkins had no other interest in said transaction; they would be authorized in finding a verdict for the defendant. 6. By the terms of the assignment of the plaintiff to Blodget, dated December 26, 1879, the plaintiff authorized the defendant to pay to said Blodget whatever sum of money

the plaintiff was entitled to receive for his interest in said policy, and thereby relieve the defendant corporation from all responsibilities as to the disposition which said Blodget should make of the sum of money so received. 7. By the terms of the assignment of the plaintiff to Blodget, dated December 26, 1879, the plaintiff is estopped from making upon the defendant the claim set out in his declaration in either count thereof."

The judge declined to give these instructions except the first,. and upon the points covered by the others instructed the jury as follows: "The plaintiff says he is the legal owner of this policy of insurance; that he took it for the purposes of friendship to Mr. Fisher; that he obtained the absolute legal title of the policy by assignment before he surrendered it to the company; that he procured a release from Mrs. Fisher, who had a legal interest in the policy; that he took from her, in accordance with the suggestions and rules of the company, a release, and that he had in this way vested in himself the authority and right to collect the whole value of this policy; that the company assented to this; that the company treated the value as $3000, and that he has only had $2000. On the other hand, the defendant says that it has paid this full value of the policy to Blodget, and that it had authority to pay it to Blodget, because the plaintiff assigned it to him, and that authorized the defendant to pay to Blodget, and that so it discharged its duty, and that the plaintiff must look to Blodget for any remedy that he may have.

"In substance the whole inquiry seems to be whether or not Blodget continued to be in this transaction the agent of the defendant, after the receipt of the money and at the time of the receipt of the money, or whether at a certain point of time he became the agent of the plaintiff, or whether the plaintiff so conducted the matter as to give the defendant the right to believe that it had the right to treat Blodget as his agent. The policy had some surrender value, and that the company has paid to Blodget. The question is whether Blodget received it as its agent, for the further duty on its behalf to pay it to the plaintiff, or whether the plaintiff had constituted Blodget his agent, or, by the assignment, *quasi* owner of the policy either to his own use or as the plaintiff's agent.

"If Blodget did not receive this money as his own, or did not receive it as the agent of the plaintiff, he received it as agent of the company, and was bound to settle with the plaintiff for the company, and he had no legal right to take out his private debt. On the other hand, if he received it in his own right, or as the agent of the plaintiff, so far as the defendant is concerned, it is none of its concern what settlement he makes ; for the defendant discharged its whole duty. Has it discharged its duty or not ? That depends upon the question whether it transmitted it to its agent or the agent of the plaintiff.

"It is not important to dwell upon the general question of Blodget's relation to the defendant company, because the authority in this case, whatever it was, is specific, and depends upon the correspondence of the company with Blodget in regard to this particular matter.

"On the one hand, it is contended that these papers are the ordinary papers which men would execute when making sales of property. For instance, if Blodget had been a stranger, upon the face of the papers there would be no doubt that the plaintiff had given Blodget a legal title to this property ; and if he had gone to the company as a stranger, having had no previous correspondence with it, and presented himself armed with these papers, and the defendant in good faith paid the money, in that aspect of the case it would have been discharged from any other responsibility. On the other hand, if this is simply to put the plaintiff or Mr. Fisher in a way of collecting this claim, if the defendant gave these parties to understand, through its agent, that it was the proper assignment, it cannot set up that this was an absolute assignment, if it was a mode pointed out by the company, through its agent, for getting the papers in such shape as it wanted them to enable it to pay the cash surrender value. In this connection you will consider, of course, the receipt which was given by Blodget and signed as manager. If that was forwarded to the company, then the mere form of the papers would not be material, unless the defendant understood or had a right to understand that this was a transaction which Blodget was carrying on for his own benefit.

"In regard to the distinct value of Mr. Fisher's and his wife's interest, if you understand that the substance of the action of

the company was to treat the plaintiff as representing all the interests in this policy, by virtue of the release from the wife, it had the right to so consider and treat him; and if it did, Mrs. Fisher assenting, there is no reason why it should not stand by the arrangement, and give to him the cash value of the policy."

The jury returned a verdict for the plaintiff in the sum of $1052.17; and the defendant alleged exceptions.

*E. P. Brown*, for the defendant.

*R. M. Morse, Jr.*, for the plaintiff.

DEVENS, J. Warren Fisher having been declared a bankrupt, the defendant, who had made a paid-up policy of insurance for the sum of $4000 payable to Fisher on January 30, 1886, but if he should die before that date payable immediately to his wife, Virginia E. Fisher, authorized Henry T. Blodget to give the cash value of $3000 for the policy if the same could be purchased within thirty days, informing him that Fisher and his wife were the only persons known to be interested in the policy.

In this policy Mrs. Fisher had a distinct interest, which did not pass to the assignees in bankruptcy of Warren Fisher. *Knickerbocker Ins. Co.* v. *Weitz*, 99 Mass. 157. *Gould* v. *Emerson*, 99 Mass. 154. *Potter* v. *Spilman*, 117 Mass. 322. *Unity Assurance Association* v. *Dugan*, 118 Mass. 219. The plaintiff purchased of the assignees in bankruptcy their interest in the policy, and received the same from them; and all papers necessary to be executed either by him or Mrs. Fisher to give the defendant by surrender a complete release from its liability on the policy were within the time fixed transmitted to the defendant by Blodget.

The defendant has paid to Blodget the sum of $3000, of which sum $2000 has been paid to the plaintiff, the remainder being detained by Blodget on the ground that he has a claim against Warren Fisher; and the defendant contends that its liability upon the contract, authorized by it to be made and of which it has received the full benefit, is at an end, because it has paid the full sum to Blodget, who received such sum, not as the defendant's agent, but as the agent of the plaintiff. It further contends that the present plaintiff can only recover the value of the interest which the assignees in bankruptcy took in the

policy, and has no right or authority to recover for the interest which Mrs. Fisher had in the policy for her own benefit.

It has been found as a fact, that throughout this transaction Blodget acted as the agent of the defendant, and not of the plaintiff, and this finding is well sustained upon the evidence. He had the distinct authority of the defendant to purchase for a particular sum, being careful that he got possession of all the interests which existed in the policy, and this he did. He receipted for the policy to the plaintiff as forwarded to the defendant, receiving it as surrendered for cash value, signing this receipt as " manager." The extent of his general agency for the defendant is not very important, nor whether he actually transmitted a copy of this receipt to the defendant. As appears by his correspondence, he advertised himself as manager with its knowledge, and it is sufficient for this case that he had an ample authority to make this particular purchase. The assignment of the plaintiff was indeed made to Blodget on December 26, while the paper signed on that day by Mrs. Fisher was in form a request that the defendant should pay the surrender value, and a surrender and transfer of her right to the company. On a subsequent day, December 29, she was induced to sign a paper transferring her interest in the policy to Blodget. But whatever might be the form in which the papers were made, whether to Blodget personally or not, if he was acting as agent for the defendant, the company was responsible for that which he agreed should be done. It was in evidence " that after the purchase from the assignees it was necessary to perfect the title, and that the assignments put in evidence were prepared and executed accordingly; that Blodget said it could not be corrected otherwise." Nothing is more common than for an agent to use his own name in transacting a business where releases are necessary, and the fact that he thus sees fit to conduct the business cannot affect the other party. It is difficult to see any time when, or any act by which, the plaintiff or Mrs. Fisher adopted him as an agent, nor does it even appear by the correspondence of the defendant that it so regarded him, although, at his request, it changed the form of the check sent to him, for the purpose of enabling him to carry out his scheme for making Mrs. Fisher pay her husband's debt.

The plaintiff was also entitled to represent Mrs. Fisher so as to receive her interest in the policy. He had the assignment of the policy, the legal title was in him, but he had no right to surrender it without her assent. As the plaintiff was bound to protect Mrs. Fisher's interest, when she executed a paper requesting that the defendant pay the surrender value, and, as a part of the same transaction, the authorized agent of the defendant received from the plaintiff the policy "as surrendered for cash value," the jury were justified in finding that the defendant treated the plaintiff, who was the legal holder of the policy, as representing all the interests in it. Mrs. Fisher did not indeed execute an assignment of her interest to the plaintiff, but she consented to the contract made by the receipt with him, and looked to him, as her trustee, to pay her her proper proportionate share. Had there been a contract with her by which she had agreed with the defendant's agent to sell her interest, some price would have been named for it; an interest so valuable would not have been parted with unless this had been fixed. It is for the reason that the only object was to perfect the title in the plaintiff, to enable him to receive the money, that no agreement on this subject was made. When this was done, and payment made to the plaintiff, her proper share of the $3000, which was alike the agreed price and "the cash value," would be readily ascertained by rules well known to experts in this class of securities.

These suggestions cover the objections to the instructions as given, which appear to us well adapted to enable the jury to dispose properly and intelligently of the cause, as well as the exceptions of the defendant on account of the failure to give certain instructions requested by it. We proceed briefly to examine them. The first instruction was given as requested. The second and fourth are not important in the aspect of the case as presented, as they only relate to the amount which the plaintiff could recover if not entitled to recover the full contract price. They have reference only to the rights of the plaintiff and Mrs. Fisher *inter sese*. The third was sufficiently given by pointing out the distinct interests of the assignee of Warren Fisher and of his wife in the policy. Given in the form in which the plaintiff requested, it would have conveyed the idea that the

assignee was not entitled to the contract. The fifth instruction, if given as requested, would have conveyed the impression that, even if an agreement had been made with the plaintiff to pay him the whole cash value, if he received the amount advanced by him, he could not recover, which would have been erroneous. However little or much he had advanced, if, as her trustee, he had made an arrangement with the other party interested to surrender the policy, he would be entitled to recover for her benefit as the legal holder of the policy. The sixth and seventh instructions should not have been given. The plaintiff had a right to show, as against the defendant, that the form of the papers was arranged by its agent, and assented to by him as a convenient mode pointed out by the agent to place the securities in the condition desired by the defendant, and which would be satisfactory to it in the surrender of the policy.

*Exceptions overruled.*