## In re WELLING.

(Circuit Court of Appeals, Seventh Circuit. January 21, 1902.)

### No. 809.

1. BANKRUPTCY—ASSETS—SEMITONTINE POLICY.

Bankrupt Act, § 70a (30 Stat. c. 541), provides that a trustee in bankruptcy shall be vested with the title of the bankrupt to (subdivision 5) property which he could by any means have transferred, or which could have been sold under process against him, provided that where any bankrupt has any insurance policy which has a "cash surrender value," payable to himself, he may pay such surrender value to the trustee, and retain the policy free from creditors. A semi-tontine policy on a bankrupt's life contracted to pay insured's wife $10,000 on his death, and, further, that if three annual premiums had been paid, and default was afterwards made, a proportionate paid-up policy should be issued in favor of the wife. The provisions indorsed on the policy, and made a part thereof, recited that at the end of the tontine period insured should have certain options, one of which was to receive in cash the policy's accumulated reserve, and also the surplus apportioned to it. *Held*, that though the policy had no "cash surrender value," within the meaning of the proviso, it had an actual value, which constituted a right of property in the bankrupt, and which could have been transferred by him, and therefore passed to the trustee.

2. SAME—DISPOSITION OF POLICY BY TRUSTEE.

As the trustee takes the policy subject to the duty of continuing it in force by the payment of premiums until the completion of the tontine period, and subject to the contingency of the bankrupt's death before that time, in which event he would fail to realize anything,—the policy being payable to the bankrupt's wife,—either the actual value of the policy at the adjudication in bankruptcy should be determined, and the bankrupt permitted to pay to the trustee the proportion coming to him at the time stated, and to receive a conveyance from the trustee of all claims thereto, or the trustee should be directed to sell the bankrupt's interest in the policy at the date of the adjudication in bankruptcy for the benefit of his creditors.

Grosscup, Circuit Judge, dissenting in part.

Appeal from the District Court of the United States for the Northern District of Illinois.

On the 13th day of April, 1900, David Welling, a citizen and resident of the state of Illinois, was by the court below adjudged a bankrupt, and on the 20th of that month filed schedules of his property. On May 11th the Chicago Title & Trust Company was appointed trustee of the bankrupt. In the schedule of assets the bankrupt did not include a certain policy of life

insurance, dated March 16, 1892, issued by the Equitable Assurance Society of the United States (being numbered 336,460), for the sum of $10,000, upon the life of the bankrupt. On the 22d of October the trustee filed its petition setting forth the facts above stated, and praying that the bankrupt be required to appear and be examined concerning the policy, and to show cause why he should not surrender the policy to the trustee according to the bankrupt act, that the surrender value thereof may become an asset for distribution to his creditors, and that Welling may not be discharged of his debts under his petition to that end theretofore filed, until such examination be had. The answer of the bankrupt denied that the policy in question was an asset of his estate; admitted that it had a cash surrender value, but that such cash surrender value is the property of Anna B. Welling, his wife; denied the right of the trustee to the possession of the policy, or to obtain its surrender value; and alleged that the assurance company was under no legal right and was not legally bound to pay to the bankrupt any sum of money as a cash surrender value of the policy, that the amount offered by the company as hereinafter stated was offered only in a spirit of accommodation, and that the company would not under any circumstances pay the surrender value without the concurrence of his wife. The matter was referred to a referee, and there was produced before him a communication from the actuary of the company under date of July 21, 1900, offering, upon return with proper release of the p..licy on November 27, 1900, or within six months thereafter (if premiums be paid to that date, and the premium due on that date be not paid), to pay in cash $2,926, or a paid-up policy for $7,000; the offer not to be binding after the expiration of the six months named. The offer also required the release to be signed by Mrs. Welling. By the contract of insurance in question the assurance society, in consideration of the payment of $250 semiannually on May 27th and November 27th of each year for 20 years, promises to pay to Anna B. Welling, the wife of the bankrupt, for her sole use if living, and if not living to the surviving children of David Welling, or their guardian for their use, or, if there be no such children surviving, then to the executors, administrators, or assigns of the bankrupt, the sum of $10,000 within 60 days after satisfactory proofs of the death of the bankrupt. The policy contains a further provision that if premiums upon the p: licy for not less than three complete years of assurance shall have been duly received by the society, and the policy should thereafter become void in consequence of default in the payment of a subsequent premium, the society will issue in lieu of such policy a new paid up policy, without participation in profits, in favor of Anna B. Welling, if living, and, if not living, to the surviving children of David Welling, or their guardian for their use, or, if there be no such children surviving, then to the executors, administrators, or assigns of David Welling, for as many twentieth parts' of the original amount assured as there shall have been complete annual payments received in cash by the society at the date when default shall first be made, provided that the policy shall be surrendered, duly receipted, within six months of the date of default in payment of premiums as mentioned. The provisions indorsed upon the policy are made part thereof as fully as if they were recited at length therein. There is indorsed upon the policy the following: "(1) That the policy is issued under the semitontine plan, the particulars of which are as follows: (2) That the tontine dividend period for this policy shall be completed on the twenty-seventh day of November in the year nineteen hundred and six. (3) That no dividend shall be allowed or paid upon this policy unless the person whose life is hereby assured shall survive the completion of its tontine dividend period as aforesaid, and unless this policy shall be then in force. (4) That all surplus or profits derived from such policies on the semitontine plan as shall not be in force at the date of the completion of their respective tontine dividend periods shall be apportioned among such policies as shall complete their tontine dividend periods. (5) That upon the completion of the tontine dividend period on Nov. 27th, 1906, provided this policy shall not have been terminated previously by lapse or death, the said David Welling shall have the option either—First, to withdraw in cash this policy's entire share of the assets (i. e., the accumulated reserve, which shall be six thousand eight

hundred and fourteen $^{50}/_{100}$ dollars), and in addition thereto the surplus apportioned by this society to this policy; secondly, to convert the same into a paid-up policy for an equivalent amount, provided, always, that, if the amount of said paid-up policy shall exceed the original amount of the assurance, a satisfactory certificate of good health from one of the society's medical examiners shall be required; thirdly, to withdraw in cash the share of the accumulated surplus apportioned by said society to this policy, and continue the policy in force on the ordinary plan; or, fourthly, to continue the assurance for the original amount, and apply the entire tontine dividend to the purchase of an annuity; the amount derived from such annuity, together with annual dividend on this policy, shall be paid in cash to said David Welling or assigns." The policy does not provide for its surrender by the assured, or for payment of its surrender value. The referee reported that the policy had no cash surrender value payable to the bankrupt under its terms, did not belong to the class of policies referred to in section 70 of the bankruptcy act, and the petition of the trustee should be dismissed. The court on June 4, 1901, overruled the exceptions to the report, and decreed that the report stand approved, from which decree this appeal is taken.

George Sawin, for appellant.

Philip S. Brown, for appellee.

Before JENKINS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

JENKINS, Circuit Judge, after stating the facts, delivered the opinion of the court.

In the case with which we have to deal, the law of the state of the domicile of the bankrupt does not exempt policies of insurance from judicial pursuit by creditors. The questions, therefore, are sharply presented, whether the insurance in question is property which, under the bankruptcy act, passes to the trustee, and whether the case comes within the proviso of section 70a of the act (30 Stat. c. 541). The solution of these questions requires us to ascertain the real nature of this contract. The policy is a semitontine policy; upon its face, an ordinary life policy, the premiums payable in 20 years, and the amount stated to be paid upon the death of the bankrupt to his wife, Anna B. Welling, if she be living; otherwise to his surviving children, if any; otherwise to his legal representatives or assigns. It also provides for the right after payment of premiums for three years, and upon default thereafter in the payment of a subsequent premium, to a paid-up policy, without participation in profits, in favor of the wife, if living; if not living, to the surviving children; and, if none such, to the personal representatives or assigns of David Welling,—for as many twentieth parts of the original amount assured as there have been complete annual premiums received. If these provisions constituted in full the contract, we could not doubt that the bankrupt has no pecuniary interest in the policy which would pass to his trustee, because in no case would there be payable to him in his lifetime any sum of money whatever upon the contract. There are, however, superimposed upon this contract certain conditions which qualify its effect and restrict the rights of the wife. These conditions declare that upon the completion of the tontine dividend period, November 27, 1906, the policy not having then been terminated by lapse or death, the bankrupt, not his wife, should have one of the four specified options, one of which is to receive in cash the

policy's accumulated reserve, stated to be $6,814.50, and also the surplus apportioned by the society to the policy. It is clear that the entire interest of the wife in this policy, and her right to receive any sum of money thereon, is contingent upon the death of her husband before the completion of the tontine period, subject, per-- haps, to her right before that time to receive in lieu of the policy a paid-up policy upon her husband's life, payable to herself, for as many twentieth parts of the sum assured as there have been annual dividends paid. It is likewise clear that this is also a contract be-- tween the assurance society and the bankrupt that on the 27th day of November, 1906, if he then survive, the society will pay him, if he so elect, a certain sum of money, or, should he so elect, will issue certain insurance to him, as stated in the condition. We cannot doubt that the bankrupt, from the moment the policy was issued, had a pecuniary interest in it, and a right to receive money upon it at the stated time, contingent only upon his surviving the tontine period; that the wife's interest is contingent upon her husband's death within the tontine period; and that her interest lapses at the completion of the tontine period, unless there had been substituted for the policy a new paid-up policy in the event and upon the terms stated. The proviso of section 70a declares that:

"When any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate or personal representatives, he may within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated and continue to hold, own, and carry such policy, free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets."

We are of opinion (and therein we concur with the court below and with the referee) that this policy does not fall within the proviso. The term "cash surrender value," therein employed, has a defined and legal meaning, namely, the cash value—ascertainable by known rules—of a contract of insurance abandoned and given up for cancellation to the insurer by the owner, having contract right to do so. The "surrender" of the proviso is not the subject of negotiation or agreement, but of right. The proviso does not include those policies where the right to surrender is not given by the contract. In the present case, failing provision in the policy to that end, surrender could only be legally accomplished through agreement with the company by the joint action of Welling and his wife. There exists no right in the wife or in the bankrupt, or in both jointly, to surrender. It could only be done by the joint action of the two by agreement with the assurance society. If provision for surrender were incorporated in the contract, it would not be within the power of the bankrupt to surrender the policy, and thereby cut off the interest of his wife therein. Bank v. Hume, 128 U. S. 195, 9 Sup. Ct. 41, 32 L. Ed. 370. She has a distinct interest in the policy, which does not pass to the trustee in bankruptcy. Atkins v. Society, 132 Mass. 395, 402. We cannot concur in the suggestion to the contrary in Re Steele (D. C.) 98 Fed. 78, 80. Nor could the bankruptcy court rightfully compel such surrender and cancellation of the pol--

icy by the bankrupt, he agreeing thereto in concurrence with the company; for that might be to deprive the wife of her interest. And likewise it would not be within the power of the wife to surrender the policy, and thereby deprive the husband of his right at the end of the tontine period to receive the stipulated amount. Surrender can only be accomplished through agreement with the company by the joint action of husband and wife. Besides, if we concede that this policy has a "cash surrender value," within the meaning of the proviso, that value was not "payable to himself," for both the bankrupt and his wife had an interest therein. We are not advised by the record, nor are we otherwise informed, that there is any known rule by which surrender value—assuming such to exist—could be equitably apportioned between the bankrupt and his wife, or by which it could be ascertained what proportion thereof was "payable to himself," within the meaning of the proviso. From the report in Re Diack (D. C.) 100 Fed. 770, the referee would seem to have reached an apportionment in such case, but the basis of his calculation is not apparent. We are therefore clearly of opinion that the policy in question does not fall within the provisions of the proviso.

But it does not follow, as was assumed by the court below and by the referee, that, because the policy does not fall within the terms of the proviso, the bankrupt has not property therein which passes to his trustee. By the terms of the policy he was entitled to receive at the end of the tontine period the cash payment stipulated in the contract. That is a vested contract right, contingent only upon his surviving the tontine period. The right is valuable, increasing in value with each successive payment of premium. The policy, technically, had not a "surrender value," within the meaning of the proviso; but it had an actual value, and that valuable right was right of property existing in the bankrupt. It is the plain provision of the bankruptcy law that all the estate of the bankrupt shall, by operation of law, be vested in the trustee, save such as is specifically excepted by the provisions of the bankruptcy law, or by the law of the domicile of the bankrupt. The language of the provision is comprehensive. Subdivision 5 of section 70a declares that there shall be thus vested in the trustee "property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him." Then follows the proviso which we have considered. It is clear that this proviso merely defines a certain class of insurance which may be excepted and exempted, by the action of the bankrupt and upon the conditions stated, from the general property which by the law is vested in the trustee. In other words, the proviso is in the nature of a privilege to the debtor to retain such specified insurance upon yielding to the trustee the cash surrender value of the policy at the time of adjudication. All other property of the bankrupt, including all insurance owned by him, which does not fall within the provisions of the proviso, passes to the trustee. The statute cannot legitimately be construed to mean that a policy does not vest in the trustee except it have a cash surrender value, and that such may be rescued by the bankrupt upon

113 F.—13

the terms stated. The meaning of the provision is clear,—that all the property of the bankrupt except that specified in the proviso, shall be vested in the trustee, and that also shall pass unless the bankrupt avail himself of the privilege granted him by the law. The contract in question gives to the bankrupt the right to receive at a certain date a specified sum of money, contingent upon his surviving to that date. This is a vested right of property existing in the bankrupt, which passes to the trustee. It is a property right which he could have transferred, and it falls within the comprehensive language of the section which vests title in the trustee. 2 May, Ins. § 459d; Porter v. Porter, 2 Willson, Civ. Cas. Ct. App. § 434; Cameron v. Fay, 55 Tex. 58; Levy v. Van Hagen, 69 Ala. 17; Tompkins v. Levy, 87 Ala. 263, 6 South. 346, 13 Am. St. Rep. 31; Boyden v. Insurance Co., 153 Mass. 544, 27 N. E. 669; Tennes v. Insurance Co., 26 Minn. 271, 3 N. W. 346; Talcott v. Field, 34 Neb. 611, 52 N. W. 400, 33 Am. St. Rep. 662; Evers v. Association, 59 Mo. 429. In the last case it was ruled that there was no joint interest in the policy during the continuance of the life of the insured; that while he lived he had the sole and absolute interest, with a bare contingency resulting to the other party, that, "had he survived to the designated time when the payment of the policies was to inure to him personally, he, and he alone, would have reaped their fruits, and no other one was jointly interested with him"; and that the interest of the beneficiary did not take effect until the insured's interest ceased by death. It does not appear that the policy in that case contained a provision like the one here, providing for a paid-up policy to the beneficiary named in case of default in the payment of premium after three annual premiums had been paid. This provision, even if the doctrine of the Missouri case can be upheld to its full extent, would, as we think, give to the wife a present right and interest in the policy, to receive upon the conditions stated a paid-up policy upon the life of her husband,—a right however, which she could not exercise without his consent, since that would be to deprive him of his right to receive the amount specified at the conclusion of the tontine period.

The case of Ex parte Dever, 18 Q. B. Div. 660, is not in conflict with our conclusion. The policy there was like to the one here, except that the right of option at the conclusion of the tontine period was vested in the wife, and not the husband. The right of the husband to receive anything under that policy rested in the possibility of the wife, at the end of the tontine period, exercising her option to receive a specified sum of money, which, it was argued, under the marital laws of England, would pass to the husband. Whether it would so pass was not determined; but the court ruled that the husband had no property right in the policy which passed to the trustee, because it was something that could only accrue in the exercise of the wife's option on the double contingency which had not happened at the time he obtained his discharge. The court said:

"It was the mere hope of a hope that something might come to him by reason of his surviving the ten years, and of his wife's exercising her option in that particular manner, and it was a mere spes, and there was nothing which could vest in the trustee in bankruptcy."

In re Slingluff (D. C.) 106 Fed. 154, 3 Nat. Bankr. News, 254, 5 Am. Bankr. R. 76, was a case upon an endowment policy, where the specified amount was payable to the bankrupt at the date stated, if he survived, and, if he should die within the period, then to the wife or her legal representatives. Judge Morris in that case delivered an able and exhaustive opinion, covering the whole ground here considered, and reaching the conclusion to which we are compelled.

It remains to consider how this matter should be dealt with by the court below. The trustee takes the policy as of the date of the adjudication in bankruptcy, and subject to all its burdens. He takes it subject to the duty of continuing it in force by the payment of semiannual premiums until the completion of the tontine period. That will involve a large outlay of money, which may prove burdensome to the estate. He also takes the policy subject to the contingency of the death of the bankrupt before the completion of the tontine period, and, if that contingency should happen, he will fail to realize anything, and possibly the bankrupt's estate might lose the amount disbursed in payment of premiums. There would seem to be two modes of practically and equitably solving the problem. One is to ascertain, if it be possible, the actual value of the policy at the date of the adjudication in bankruptcy, and the equitable apportionment of that value among the respective interests in the policy, and then, in analogy to the declared policy of the law as stated in the proviso, to permit the bankrupt, if he so desire, to pay to the trustee that proportion of the actual value which would be coming to him at the time stated and upon the plan suggested, and that the trustee thereupon convey all claim to the policy to the bankrupt. The other plan is to direct a sale by the trustee of the interest of the bankrupt in the policy at the date of the adjudication in bankruptcy. These views are suggested to the court below for its consideration in the equitable disposition of the matter under the rules which we have declared, and because the record furnishes no data from which specific directions may be given.

GROSSCUP, Circuit Judge (dissenting). I concur in the opinion that the policy does not fall within the provisions of section 70a relating to a cash surrender value; but am forced to dissent from that portion of the opinion which holds that in virtue of the condition of the policy relating to David Welling's right of election upon the completion of the tontine dividend period, November 27, 1906, Mrs. Welling's vested interest will cease, and Welling's right become a property which could have been transferred April 13, 1901, the date of adjudication, or which might have been levied upon and sold under judicial process against him.

The policy, on its face, contracts to pay Anna B. Welling, if living, or, if not living, the surviving children, the sum of ten thousand dollars within sixty days after satisfactory proofs of death of David Welling, subject, however, to the condition, among others, that upon the completion of the tontine period, November 27, 1906, (the policy not having been terminated previously by lapse or death) David

Welling should .have the option: (a) to withdraw in cash the policy's entire share of the assets; (b) to convert such share into a paid-up policy for an equivalent amount; (c) to continue the policy in force on the ordinary plan, withdrawing the accumulated surplus in cash, or, (d) to continue the policy for the original amount, applying the tontine dividend to the purchase of an annuity for the benefit of David Welling.

Now, the law holds, that in a policy of insurance taken out by a husband on his life, making a reasonable provision for the family after his death, without intent to hinder, delay or defraud creditors, the interest of the wife vests from the moment the policy is issued, and remains vested until the policy matures, unless there is a clear provision to the contrary. The policy under consideration contains no clear contrary provision. The right of Welling to take out, at a given period, the value of the policy in cash, connected as it is with the other alternative, that the policy may continue in force on the ordinary plan, is not in itself a divestment of Anna B. Welling's interest. The alternative—the continuance of the policy in force on the ordinary plan—is a continuance of her vested interest as it was previously. The effect of the contract, taken as a whole, is that the insurance company promises to pay Anna B. Welling, or the surviving children, upon the death of David Welling, the sum of ten thousand dollars, unless on November 27, 1906, David Welling shall have elected to withdraw in cash the policy's entire share of the assets. In such a contract, the interest of Anna B. Welling, though subject at the option of David B. Welling (to be exercised November 27, 1906) to termination, is not, in fact, terminated or divested until the option has been exercised.

Assuming then, that Anna B. Welling has a vested interest in the policy, not terminable November 27, 1906, unless David B. Welling elects to take out in cash the policy's share of the assets, it is clear to me that such right of election is one not transferable, or subject to levy upon judicial process. If the subject matter of the option were a mere future interest or expectancy, disconnected from obligations to, or with the interests of, another, there might be little doubt of its assignability. But that is not its nature or substance. The subject matter of the option is a policy of life insurance—the provision a husband makes for his wife and family in the event of his death. Presumably, the wife has contributed her share toward obtaining the premiums that have enabled the husband to carry along the policy; presumably, too, any other provision for her or the family has been affected by the fact that a life insurance provision is in existence. If disposed of, such a policy, unlike other property, brings no equivalent—once let go it can in many cases never be replaced. An option so intimately interwoven with the wife's interest, and with the obligations due to her from her husband, cannot be exercised against her interests, except in exact accordance with the substantial terms in which the option is formulated and put in force.

One of those terms is that it shall be exercised November 27, 1906. Time, here, so far as Mrs. Welling is concerned, is of the

essence of the option. The interest of the wife, and the sense of obligation of the husband, may be different on that day from that of any day preceding or following. It is, in my judgment, the wife's right that the election—affecting as it does her vital interests—shall be exercised only in view of the considerations that may influence the husband at that time; neither those before nor those after.

Another term of the option is that the election shall be by the husband himself. No one else can stand in his place, or exercise the option under the circumstances and sense of obligation that will influence him. It is the wife's right to have the husband's judgment, not that of a stranger—the judgment of the man who presumably has an interest in her future, not that of a man whose interest in this respect is in conflict with hers. I am of the opinion that a fair interpretation of the spirit of the policy would disallow the exercise of the option of Welling until the day for its exercise had arrived, and would then disallow its exercise, unless it be by the judgment of Welling himself. Such an interpretation, of course, forbids the view that the option is transferable in advance—in this case six years in advance—or was subject to levy by creditors.

The decree is reversed and the cause remanded to the court below with direction to proceed therein in accordance with the views expressed in this opinion.