# IN RE A. RAUCHENPLAT, Bankrupt.

BANKRUPT'S BOOKS—OMISSION OF PROPERTY FROM SCHEDULE.

1. A bankrupt may be examined and cross-examined like any other witness.
2. Failure to keep books of account from which a bankrupt's true condition may be ascertained, must have been with a fraudulent intent to conceal his true financial condition and in contemplation of bankruptcy.
3. The law does not contemplate that his books must be kept in the most scientific manner, but only so the condition of his affairs may be ascertained.
4. An omission, fraudulently made, from a sworn schedule of property, constitutes a false oath, and is ground for refusing a discharge.

June 12, 1902.

*Mr. F. H. Dexter,* attorney for opposing creditors.

*Mr. J. M. Keedy,* attorney for bankrupt.

HOLT, Judge, delivered the following opinion:

The bankrupt filed his petition for a discharge on March 13th, 1902. Some of his creditors filed specifications in opposition thereto on March 31st, 1902. Objections thereto were sustained save so far as they set up that he, having been a merchant, had failed to keep proper books of account from which the true condition of his business might be ascertained. Leave

Re Rauchenplat.

was given to amend the second ground of the specifications, which also related to the alleged failure to keep proper books. The cause was referred to the referee, with direction to hear and report the evidence, together with his findings, to the court. During the progress of the investigation before the referee, amended specifications were filed which set up, *inter alia,* that the bankrupt had made a false oath by stating in his petition and schedules that he had surrendered all of his property. This objection came late, but the referee considered it, and the court will do so. In the progress of the hearing before the referee he ruled that the objecting creditors must produce their evidence, and could not examine the bankrupt relative to his books until they had done so. This was error. He may be examined and cross-examined like any other witness. Bankrupt Law, § 21.

Much latitude should be allowed as to his examination. This is often necessary to unearth fraud; and the bankrupt should at all times be willing to submit to examination as to his affairs. He should, of course, be protected against unreasonable examination; and if it be already full apparently, an application to further examine him may properly be refused. The bankrupt law, however, looks to a full investigation. Under it other persons may be examined, and even their books of account, in order to show that they have funds belonging to the bankrupt. The error indicated is not material, however, in this instance, as it appears from the record that before the investigation closed the bankrupt was fully examined and cross-examined.

He had, for some eight years prior to 1899, been a merchant. He then obtained what is known under the local law as a "suspension of payments," and became a salaried clerk for Fritze, Lundt, & Company. The referee allowed witnesses as to his account with them, and the attorney for the creditors was allowed to examine their books as to it. The bankrupt law provides that

Re Rauchenplat.

a bankrupt shall be discharged unless he has (1), with fraudulent intent to conceal his true financial condition and in contemplation of bankruptcy, failed to keep books of account from which his true condition may be ascertained; or (2) has concealed, while a bankrupt, from his trustee, any property belonging to his estate in bankruptcy; or (3) has made false oath in relation to the proceedings in bankruptcy. Bankrupt. Law, §§ 14–29.

It is claimed the bankrupt not only failed to keep proper books of account, but that in his sworn schedules of all his estate he failed to state that he had two policies of life insurance; and thereby made a false oath. These are the only grounds of objection that can be considered, as none others are presented by the record. In fact the grounds upon which a discharge can be refused are very much limited by the bankrupt law. In order that a discharge may be refused by reason of the failure to keep books of account from which the bankrupt's true condition may be ascertained, it must have been with a fraudulent intent to conceal his true financial condition and in contemplation of bankruptcy. The referee found that this was not the case in this instance. The account books of the bankrupt were mainly kept by his employees. They appear to have been kept in an informal manner, but yet it is not shown that his true condition cannot be ascertained from them. There has been no attempt to balance them; and it is shown that upon some one or the other of his books all of his business transactions were entered. It is possible, therefore, to arrive at his financial condition from them; and it is quite evident there was no fraudulent intention upon his part, by the way they were kept, to conceal his condition. The manner of keeping them is explained, and is not suspicious. It is not required that a bankrupt's books shall be found to have been kept in the most scientific

manner, but only in such a way that the condition of his affairs may be ascertained; and even if badly kept, it is not ground for refusing a discharge unless there was a fraudulent purpose in connection with them upon the part of the bankrupt.

Clear and convincing evidence is required to refuse a discharge upon the ground that a bankrupt has made a false oath, and omitted property from his schedule. There is, however, no doubt that the verification of schedules from which valuable property has been knowingly omitted constitutes a false oath under subd. 2, § 29 b, of the bankrupt act; but the omission must have been made with fraudulent intent. Re Eaton, 110 Fed. 731.

The burden of showing omission is on the creditor objecting to the discharge; but when once shown, a prima facie case is made out, and the bankrupt should explain it. The law requires that he should in good faith bring his entire property into court; no *mala fides* must appear; he must act with absolute honesty; then the law relieves him from misfortune, and gives him a discharge. If he is scheming to hold property and be relieved from his debts, he is not entitled to consideration from the court. It is shown that there were two policies of insurance upon his life for $5,000 each, in the Sun Life Insurance Company, of Canada. One was issued February 24th, 1894, and the other August 4th, 1896, he being thirty-five and thirty-seven years old, respectively, at their issual. Each is payable to his wife and children sixty days after proof of his death shall be furnished to the company. One is an ordinary life policy; while the payment of premiums upon the other is to last but twenty years. A commuted policy may issue as to each of them after a certain period. They do not appear subject to any cash surrender value or assignment. There is no doubt that life insurance payable to a bankrupt, or in case of death before ma-

Re Rauchenplat.

turity to his wife, but by the terms thereof assignable, vests a property right or pecuniary interest in the bankrupt, which passes to his trustee; and this is true even though the policy does not provide for a surrender value. Re Slingluff, 106 Fed. 154.

These policies, however, are of a different character. Each of them is payable only to the wife and children within sixty days after the death of the insured. They had no surrender value, and it does not appear that the bankrupt had any pecuniary interest in them. Even admitting that he had, it was not an appreciable interest, but so vague and uncertain that a charge of fraudulent concealment cannot fairly be predicated on the omission of the policies from his schedules. The omission even then would not be incompatible with honesty of purpose; and he could well have believed in good faith that he had no assignable interest in them. Ordinarily, when life insurance is payable on the death of the insured to someone else named, it is not to be treated as a part of his estate, and subject to his debts, but is payable directly to the beneficiary. The cases upon this subject which have been cited by counsel for the creditors related to policies different in form from those now being considered. Some of them provide that at the end of the tontine period the insured shall have certain options. He may receive at a certain date a specified sum, contingent upon his surviving to that date. This was so in Re Welling, 51 C. C. A. 151, 113 Fed. 189, which counsel cites as controlling this case. There the insured unquestionably had a pecuniary interest in the policy which passed to his trustee. In the case now presented, however, the bankrupt had no interest which he could have transferred; he had no interest that could have been seized under judicial process, and no actual pecuniary interest whatever in the policies.

The report of the referee is, therefore, confirmed, at the cost of the objecting creditors, and a discharge is granted.