## GOULD v. NEW YORK LIFE INS. CO. et al.

(District Court, E. D. Arkansas, W. D. November 2, 1904.)

1. BANKRUPTCY—PROPERTY PASSING TO TRUSTEE—LIFE INSURANCE POLICY.

The proviso to Bankr. Act July 1, 1898, § 70a (5), 30 Stat. 566 [U. S. Comp. St. 1901, p. 3451], which gives a bankrupt the right to retain a life insurance policy having a surrender value by paying such value to his trustee, does not prevent the vesting in the trustee under such section of title to a policy which has no surrender value, but which is payable to the bankrupt's personal representatives, and has in fact a cash value; but a policy which has no actual value as an asset does not pass to the trustee.

2. SAME—POLICY HAVING NO CASH VALUE.

A bankrupt at the time of his bankruptcy held a life policy of insurance payable at his death to his executors, administrators, or assigns. It had been in force but one year, and the first premium had not been paid, but was evidenced by his note. The second premium was required to be paid within about 30 days after the adjudication, otherwise the policy lapsed, and at the end of 30 days thereafter became absolutely void. The policy had no surrender value, and was scheduled by the bankrupt, and surrendered to the trustee, who, however, did not have it appraised, and allowed the time for paying the second premium to expire without making the payment. Subsequently, but during the time the policy still remained in force by its terms, the bankrupt committed suicide, being at the time but 30 years old and in good health. *Held*, that the policy, being at the time of the adjudication of no actual value to the estate, did not pass to the trustee as an asset, and that the administratrix of the bankrupt was entitled to the proceeds thereof.

In Bankruptcy. Action by a trustee to recover the proceeds of a policy of insurance on the life of the bankrupt.

This cause having been submitted to the court, a trial by jury having been waived, the court made the following findings of facts:

The plaintiff is trustee in bankruptcy of the estate of B. F. McKenzie, who died after the adjudication in bankruptcy. He seeks to recover by this action the sum of $5,000 from the defendant insurance company on a policy issued by it on May 16, 1903, on the life of the deceased bankrupt. The policy was a twenty annual payment life policy, payable upon the death of the assured to his executors, administrators, or assigns. The widow of the deceased bankrupt having made a claim for the money as administratrix of the estate of her deceased husband and also as the widow, the insurance company declined to pay the money, whereupon this suit was instituted, making the insurance company and the administratrix and widow of the deceased bankrupt parties defendants. The insurance company admitted an indebtedness of $4,731.92 on the policy, and paid the money into court, leaving it to the court to determine who is entitled thereto. The other defendants filed separate answers, the administratrix claiming the fund as belonging to the estate, and the widow claiming dower if it is held that the money belongs to the trustee in bankruptcy. Other facts agreed upon by the parties and adopted by the court as part of its findings of facts are as follows: "On May 16, 1903, Ben F. McKenzie took out a policy of insurance in the New York Life Insurance Company for $5,000. He did not pay the premiums in cash, but executed his note for same, which was paid by the company,

deducting the amount thereof from the face of the policy which was paid into court. That on the 16th day of May, 1903, he took out another policy of insurance in the Union Central Life Insurance Company for the sum of $5,000. Both of these policies were payable to the estate of the said Ben F. McKenzie, and are hereto attached, and made part hereof. On February 16, 1904, McKenzie, on his own petition, was adjudicated a bankrupt by the District Court of the United States, Eastern District of Arkansas, and on the ———— day of February, James Gould was appointed as trustee of his estate. In the schedules filed by McKenzie as aforesaid the policies of insurance were listed as part of his assets, but the policies were retained by McKenzie. On the 11th day of May, 1904, at his examination held before the referee, McKenzie was ordered to and did turn over these policies to the attorneys of the trustee. The annual premium of $254.85 on the policy issued by the New York Life became due on May 16, 1904, and the premiums on the Union Central policy became due one year after the date of its issuance. It was provided in the policy issued by the New York Life Insurance Company that if the premium should not be paid on May 16, 1904, the policy should be automatically extended for its full value until July 16, 1904, on which date it would lapse; and it was further provided that, if the premium was paid within one month after it became due, the policy would revive in full force; but, as McKenzie died June 19th, it was too late to revive the policy, and the same would have lapsed on July 16, 1904. The trustee in bankruptcy did not pay the premium due on May 16th, nor report to the court the fact that such premiums were due, and did not ask an order to pay such premiums, or an order to revive said policy. Neither did the trustee have the policy appraised, or offer same for sale with the other assets of the bankrupt, nor did the trustee ascertain the cash surrender value of the policy at the date of adjudication, or give the bankrupt an opportunity to pay same to him. That, if the bankrupt had lived until after July 16th, the policy would have lapsed, as did the policy in the Union Central Insurance Company, on account of the failure of the trustee to pay premiums. That at the time of his death the bankrupt was about thirty years of age, and in good health, and the cause of his death was suicide. That the policies had no cash surrender value on the date of adjudication, and would not have had any until two annual premiums had been paid. That the said Ben. F. McKenzie died by his own hand on June 19, 1904, leaving, him surviving, the defendant Sallie A. McKenzie, his widow, with whom he had intermarried on January 17, 1901, and that he and the said Sallie A. McKenzie lived and cohabited together as man and wife from that date until his death." The court further finds that the policy had no substantial value at the time of the bankrupt's adjudication, its only value being speculative, depending upon the death of the bankrupt before July 16, 1904.

J. M. & J. G. Taylor, for plaintiff.

Rose, Hemingway & Rose, for defendant New York Life Ins. Co.

White & Altheimer, for defendant Sallie A. McKenzie.

TRIEBER, District Judge. The determination of the questions of law involved in this case depends upon the construction of section 70 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]). Neither the Supreme Court of the United States nor the United States Circuit Court of Appeals for this, the Eighth, Circuit, the only courts whose judgments are conclusive on this court, has ever construed this section on the issues involved herein. While there are a number of decisions of other courts on this subject, they are anything but harmonious. The court must, therefore, determine this cause according to its own judgment, aided by the reasoning of the learned judges who have heretofore passed upon these questions.

Section 70 of the bankruptcy act, which is entitled "Title to Property," provides what property of the bankrupt shall pass to the trustee.

After enumerating certain specific kinds of property in the first four subdivisions, the fifth is as follows:

"Property which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him, provided that when any bankrupt shall have any insurance policy which has a cash surrender value, payable to himself, his estate or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sums so ascertained and stated and continue to hold, own and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings; otherwise the policy shall pass to the trustee as assets."

The contention of the learned counsel for the defendant is that under this provision the title to a life policy, payable as the one in controversy is, to the assured's executors, administrators, or assigns, does not pass to the trustee in bankruptcy, because it has no surrender value. The intent of Congress, as clearly expressed in section 70, was that the title to all property of the bankrupt not exempt under the laws of the state where the bankrupt resides from levy or sale under execution, and from the sale of which by the trustee something may be realized for the benefit of the bankrupt's creditors, should vest in the trustee. It will be noticed that this subdivision 5, § 70a, 30 Stat. 566 [U. S. Comp. St. 1901, p. 3451], provides for the vesting in the trustee of the title, not only of all property subject to seizure or sale under judicial process, but also all property which, prior to the filing of the petition, the bankrupt might have transferred. This practically covers everything which the bankrupt might own, and from which, by sale, some funds could be realized by the trustee for the benefit of the estate. In Page v. Edmunds, 187 U. S. 596, 23 Sup. Ct. 200, 47 L. Ed. 318, the title to a membership in a stock exchange was held to pass, under this provision of the law, to the trustee, and in Fuller v. New York Fire Insurance Company, 184 Mass. 12, 67 N. E. 879, the title to fire insurance policies was held to vest in the trustee. Were it not for the proviso to subdivision 5, the bankrupt would not be entitled to any privilege whatever in relation to his life policies. It is only by virtue of the proviso that he is given the option of becoming the purchaser of the policies upon payment by him of the cash surrender value, and of that he must avail himself within 30 days after the value has been ascertained. The proviso does not control the vesting of the title to the bankrupt's estate. It merely modifies it as to one item, viz., life policies which have a cash surrender value.

The office of a proviso is to restrain or modify the enacting clause of a statute. As defined by Mr. Justice Story in United States v. Dickson, 15 Pet. 141, 165, 10 L. Ed. 689:

"The general rule of law which has always prevailed, and become consecrated, almost, as a maxim in the interpretation of statutes, is that where the enacting clause is general in its language and objects, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms. In short, a proviso carves special exceptions only out of the enacting clause; and those who set up any such exception must establish it as being within the words as well as within the reason thereof."

132 F.—59

To the same effect are Dollar Savings Bank v. United States, 19 Wall. 227, 22 L. Ed. 80; Ryan v. Carter, 93 U. S. 78, 23 L. Ed. 807; Boston Safe Deposit Company v. Hudson, 68 Fed. 758, 15 C. C. A. 651; McRae v. Holcomb, 46 Ark. 306.

Following this rule, it is doubtful whether any other policy than that which has a cash surrender value is subject to redemption by the bankrupt. In re Mertens (D. C.) 131 Fed. 972. But, in view of the fact that this proviso was enacted solely for the benefit of the unfortunate debtor, and the further fact that the payment by him of the full value of the policy—that is, the payment of all that the trustee could realize by a surrender or sale of the policy—gives the creditors all that they can possibly receive, many of the courts have construed this proviso liberally by applying it to all life policies, whether they have a surrender value or not, if there is a cash value to them which can be obtained by the trustee from a sale of the policy. Such a liberal view can do no harm to the creditors, while, on the other hand, it may prove very beneficial to the bankrupt, who thereby is enabled to continue his life policy at the lower rate, based upon the age when it was first taken out, instead of paying the increased rate necessarily charged at an advanced age, and also enables him to retain a policy even if the state of his present health would prevent him from securing a new policy. But as this question does not arise in the case at bar, it is unnecessary for the court to determine it. That Congress did not intend to prevent the vesting in the trustee of the title to life policies which have a cash value but have no surrender value clearly appears from the language used, for, had that been the intention of Congress, there would have been no trouble to express it in terms neither ambiguous nor subject to different constructions.

Another reason why it is clearly apparent that Congress did not intend to prevent a trustee in bankruptcy from becoming vested with the title to policies which have a cash value, but no surrender value, is that it is a well-known fact that until within the last few years many of the leading life insurance companies did not issue policies which had a cash surrender value at any time before maturity, basing their refusal to do so upon the meritorious ground that the right of surrender would in many instances defeat the beneficent object of life insurance to provide a fund for the family of the assured after his death, as the fact that the money could be obtained at any time by a loan or a surrender of the policy would tempt the assured to avail himself of this privilege whenever his business interests required any moneys which he could not otherwise easily obtain. Many of the tontine policies, when first issued, not only made no provision for a cash surrender value, but contained a special provision for an entire forfeiture of the policy upon the failure of the assured to pay a single premium at maturity, although such premium was the last one to be paid before the maturity of the policy.

If the contention of the learned counsel for the defendant is correct, such a policy, no matter how great its actual value, or how large a sum could be obtained by a sale thereof, would still remain the property of the bankrupt. It requires no extended argument to show that such a construction would be in conflict with the entire spirit of the bankruptcy act. The court is clearly of the opinion that the title to a life policy payable, as this was, to the assured's executors, administrators,

or assigns, passes to the trustee upon the adjudication of bankruptcy, even if it had no surrender value, provided it has a real cash value, which could be realized either by sale by the trustee or otherwise. The identical question has been decided in conformity with the views herein expressed in Re Welling, 113 Fed. 189, 51 C. C. A. 151, in Re Slingluff (D. C.) 106 Fed. 154, and in Re Mertens (D. C.) 131 Fed. 972.

But, if the policy has no actual cash value, does the title vest in the trustee? That this policy had no real cash value is apparent from the agreed statement of facts. The policy had been in force only one year. The first premium had not yet been paid, although the policy, having been delivered, was in full force. The assured was, at the time of his death, only 30 years of age, and in good health. The annual premium for the next 19 years was $254.85. Unless the second annual premium was paid on or before the 16th day of June, 1904, the policy would become absolutely worthless on the 16th day of July, 1904. The trustee made no efforts to pay the premium, and it is hardly necessary to state that, had he applied to the court for directions, the court would not only not have authorized him to pay the premium on the policy, but would have directed him to surrender it. It was the unfortunate suicide of the bankrupt less than a month before the policy became absolutely void which made it a valuable asset.

The general rule is that personalty which has no salable value, such as books of account, private manuscripts, family pictures, and heirlooms, are not subject to levy and sale under execution; for the object of an execution, as is that of bankruptcy proceedings, is to realize something substantial for the benefit of creditors, and not to harass the debtor. If nothing could be realized either by a surrender or a sale of the policy, there was nothing to pass to the trustee. Drake on Att. § 249; Rosenthal v. Circuit Judge, 98 Mich. 208, 57 N. W. 112, 22 L. R. A. 693, 39 Am. St. Rep. 535. The mere chance that the bankrupt might die, or, as in this case, commit suicide, within the short time the policy was to remain in force, is not a privilege which the law will protect. It would be a mere wager on the life of an unfortunate debtor, and for this reason against public policy. Warnock v. Davis, 104 U. S. 775, 26 L. Ed. 924; Cammack v. Lewis, 15 Wall. 643, 21 L. Ed. 244. That in such a case a policy of insurance does not pass to the trustee has been held in Re Buelow (D. C.) 98 Fed. 86, and in Re Josephson (D. C.) 121 Fed. 142, affirmed in 124 Fed. 734, 59 C. C. A. 650, and this seems to be the opinion of nearly all text-writers on that subject. Loveland on Bankruptcy (2d Ed.) p. 410; Brandenburg on Bankruptcy (3d Ed.) p. 755; Collier, Bankr. (4th Ed.) p. 514. As the policy at the time of the bankrupt's adjudication was practically of no value, for it could not have been surrendered for a cash consideration, nor, in the opinion of the court, could anything have been realized if offered for sale—and that the trustee was of that opinion is evidenced by the fact that he made no efforts to sell the same, or even have it appraised as property of the bankrupt—there was nothing to pass to the trustee except the right to speculate on the bankrupt's life for a short time; and neither the bankruptcy act nor any other statute authorizes this.

The judgment will be that the administratrix is entitled to the fund, and, as the probate court in which the estate is being administered is

vested with jurisdiction to determine the widow's right to dower, her petition to have dower assigned to her in this action will be dismissed.

In order to give the trustee an opportunity to have this cause reviewed by the Court of Appeals, if so desired, there will be a stay of 30 days granted before the money in the registry of the court is paid over to the administratrix.