JAMES A. PULSIFER, Trustee,

*vs.*

CHARLES E. HUSSEY, and another.

Androscoggin.    Opinion April 11, 1903.

*Life Insurance.    Exemptions.    Bankruptcy.    Bankrupt Act 1898, §§ 6, 70, cl. 5.
R. S., 1883, c. 49, § 94; c. 75, § 10.*

At the date of the filing of his petition, March 8, 1901, a bankrupt held a policy of insurance on his life payable to him or his assigns, if he survived twenty years, the date of the policy being March 1, 1893 ; but if he died before that time, it was payable to his wife if she survived him ; if not, to his representatives or assigns.    In 1900 his wife was divorced from him and she assigned her interest in the policy to her husband.    Shortly after that, he assigned to his daughter all his right to the sum insured "in event of death", if she survived him, but did not assign the endowment if he survived twenty years.    His trustee in bankruptcy sought by bill in equity against the bankrupt and the daughter to hold this policy, or its surrender value at the date of bankruptcy, March 8, 1901.

*Held;* that by the laws of Maine (R. S., c. 49, § 94; c. 75, § 10) this insurance is exempt from the claims of creditors; also by the bankrupt act of 1898,

The bankrupt act of 1898 provides, in section 6, that the "act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the State laws." And section 70 of the bankrupt act provides that the trustee of the bankrupt shall "be vested by operation of law with the title of the bankrupt . . . except in so far as it is to property which is exempt," to various enumerated kinds of property and to "property which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him." *Held;* that this clause must be construed in the light of the terms in the earlier part of the same section which excepts exempted property. Any other construction would annihilate all the exemptions specially provided for in the act.

By another subsequent provision in section 70 of the bankrupt act it is declared: "Provided, that when any bankrupt shall have any insurance policy which has a cash surrender value, payable to himself, his estate or personal representatives, he may within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the policy, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets." *Held;* that this proviso, instead of enlarging the rights to property in the trustee, qualifies and limits them. But for it, in states where life policies are not exempted, and no beneficiary is named, the entire interest in the insurance would pass to the trustee. The proviso limits the amount to go to the creditors to the "surrender value" only, reserving to the bankrupt an interest he would not otherwise retain. This construction gives effect to the manifest intent of Congress, harmonizes all sections of the act and escapes an otherwise unavoidable conflict between sections 6 and 70.

*Held;* that the assignment to the daughter "in the event of death" before the endowment period, is not fraudulent as to creditors. The assignment to the daughter is not of the whole policy, as it might have been, but only of the right to the fund if the assured shall die before the endowment period of twenty years. The right thus assigned has no surrender value,— that remains to the assured for the endowment period,— it had no value as to creditors, for it was absolutely exempt from their claims under the bankrupt act and the State statute. Even as his heir the result to the daughter would be the same, or it could have been accomplished by a will of the father.

The policy contains this clause: "At the end of the fifth and every subsequent fifth year from date of issue the cash value specified in table of cash surrender values indorsed hereon will be paid for this policy, provided it shall be in force under its original conditions, and is legally surrendered thereafter to the home office within thirty days from the close of such period." The date of the policy was March 1, 1893. The first surrender

period was on March 1, 1898, but the policy was not then surrendered, and that right to surrender was lost. The next period will arrive March 1, 1903, but the bankruptcy occurred March 8, 1901. *Held;* that at that date the policy had no surrender value which the company was bound to recognize. The surrender value referred to in section 70 of the bankrupt act refers only to the contract right of surrender, and not to the result of a negotiation, or act of grace.

Section 70 of the bankrupt act does not include policies payable to a wife or kindred of the assured, but only applies to policies payable to the assured or his personal representatives.

Bill in equity heard on report of agreed statement. Dismissed.

Bill by the plaintiff trustee in bankruptcy against Charles E. Hussey, bankrupt, and his daughter, seeking to hold a policy of insurance on the life of the bankrupt, or its surrender value on March 8, 1901. Date of policy, March 1, 1893.

The parties agreed to report the case to the law court upon bill, answer and replication, and the following agreements and statement of facts.

On December 12, 1899, Lizzie L. Hussey, the beneficiary named in the policy and mentioned in the plaintiff's bill, assigned to the defendant, her husband, Charles E. Hussey, or his legal representatives or assigns, all her interest in said policy. A copy of said assignment was filed with the agent of the insurance company and by him forwarded to the home office of the company, the Travelers Insurance Company, where it was received as filed on December 19, 1899. A copy of said assignment was annexed to and made part of the statement of facts.

On July 10, 1900, Lizzie L. Hussey, having obtained a divorce from her husband the said Charles E. Hussey, claiming that she had not assigned her interest December 12, 1899, executed another assignment of all her interest as beneficiary in said policy to the defendant Charles E. Hussey and a copy of the same was forwarded by him to the home office of the insurance company, where it was received and filed August 7, 1900. A copy of said assignment was annexed to and made a part of the statement of facts.

On August 10, 1900, said Charles E. Hussey, without receiving any compensation or valuable consideration therefor, gave to his daughter, Edith G. Gove, a defendant in this case, the writing of that

date by him signed which was forwarded to the same home office of the insurance company, where it was received and filed August 20, 1900.

The last named assignment is as follows: "For One Dollar, in hand paid, and for other valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the undersigned hereby assign, transfer and set over unto Mrs. Edith G. Gove, daughter, of Biddeford, Maine, (provided said assignee be living at the time of the death of the insured), all the right, title, claim, interest, and benefit of the undersigned in and to the principal sum insured in event of death by the Policy of Insurance issued by the Travelers Insurance Co., of Hartford, Conn., on the life of Charles E. Hussey and numbered 73148. In Testimony Whereof, I have hereunto set my hand and seal at Biddeford Me. this tenth day of August 1900.

Charles E. Hussey. L. S.

In presence of

H. G. Hutchinson— to C. E. H."

On said August 10, A. D. 1900, the said Charles E. Hussey was owing a large part of the debts mentioned in his schedule of liabilities and filed in court with his petition in bankruptcy.

Said plaintiff demanded of said Charles E. Hussey, to wit, on June 6, 1901, said policy of insurance, and said Charles E. Hussey refused to deliver up the same. Said plaintiff thereupon demanded of said Charles E. Hussey the equivalent of the cash surrender value of said insurance policy, and the said Charles E. Hussey refused to pay the same, and has ever since refused and neglected to either deliver said policy of insurance to the plaintiff or to pay him the said cash surrender value.

By the written terms of said policy, its cash surrender value was, on March 1, 1898, $287.50, and will be, on March 1, 1903, $712.50. But while said policy gives the right to the insured to surrender his policy only during the thirty days immediately succeeding each five year period from its date, and only provides in terms as to what the cash surrender value shall be at those periods, it is, nevertheless, the custom of said insurance company to waive the strict and literal construction of the clause in its said policy relating to the cash surrender

value of said policy, and allow said policy to be surrendered and can-celled at any time, and to pay in consideration of such surrender an increased sum therefor with each full year's premium paid thereon. In other words, under said custom, the cash-surrender value of said policy changes on the first day of March of each year during its life, and does not increase on account of anything less than a full year's premium.

Under said custom, the cash surrender value of said policy was, on March 1, 1901, $522.50, and on March 1, 1902, $615.

Said policy had no cash surrender value to said Edith G. Gove, the full sum being payable to said Charles E. Hussey at the expiration of twenty years, if he was living. And in order to have a cash surrender value, said Hussey and said Gove (if said writing of August 10, 1900, be valid) must release each of their interests in said policy.

Said insurance policy was thereupon filed in court and became a part of this agreed statement of fact, and together with said writing dated August 10, A. D. 1900, there remains, pending the final decision of the case, subject to the trial and final disposition of the court according to the rights of the parties as they should be determined.

The said Charles E. Hussey has paid the following sums at the time specified, as premiums upon said policy of insurance, since the date of his petition in bankruptcy.

| Date due. | Date payment reported by Agent. | Amount. |
|---|---|---|
| Mar. 1, 1901 | Apr. 23, 1901 | $30.85 |
| June 1, 1901 | Aug. 28, 1901 | 30.85 |
| Sept. 1, 1901 | Nov. 27, 1901 | 30.85 |
| Dec. 1, 1901 | Jan. 21, 1902 | 30.85 |
| Mar. 1, 1902 | May 29, 1902 | 30.85 |
| June 1, 1902 | July 31, 1902 | 30.85 |

*H. W. Oakes, J. A. Pulsifer and F. E. Ludden,* for plaintiff.

The proviso of the bankruptcy act of 1898, sec. 70, (5,) is a specific limitation on sect. 6, which secures to the bankrupt in general terms the benefit of the exemption laws of the State, and the title to such policy vests in the trustee, notwithstanding it is exempt

from execution under the State laws. *In re Lange,* 91 Fed. Rep. 361; *In re Scheld,* 104 Fed. Rep. 870, 52 L. R. A. 188; *In re Slingluff,* 106 Fed. Rep. 154; *In re Boardman,* 103 Fed. Rep. 783; *In re Holden,* 113 Fed. Rep. 141; *In re Willing,* 113 Fed. Rep.189; *In re Holden,* 114 Fed. Rep. 650. The language of the proviso is not limited to a policy of insurance not exempt. It refers to "any insurance policy which has a surrender value, payable to himself (i. e. the bankrupt), his estate or personal representatives." Several of the cases already cited by the plaintiff are of the same court, and of more recent date than *Steele* v. *Buel,* 104 F. R. 968. A general provision in a statute in regard to a particular subject is controlled by a special provision in reference thereto. *State* v. *Cornell,* 54 Neb. 75, 74 N. W. 432; *State* v. *Hobe,* 106 Wis. 411, 82 N. W. 336; *Rodgers* v. *United States,* 36 Ct. Cl. 266; *Kolb* v. *Reformed Episcopal Church,* 18 Pa. Super Ct. 477; *Savings Inst.* v. *Makin,* 23 Maine, 360.

A provision in a statute must be given some effect differing from that which would exist without it, and withdraw from the operation of the statute that which would otherwise have been included in it. *Quackenbush* v. *United States,* 33 Ct. Cl. 355. Counsel also cited: *In re Schenck,* 116 Fed. Rep. 554.

It is immaterial what the State law may be in regard to exemption of insurance policies, if sect. 70, (5,) of the bankruptcy act overrides the State law, as indicated by the above decisions. No person had any interest in the policy except the bankrupt, on Dec. 12, 1899, and it became virtually and in fact a policy payable to his estate, and so within the express provisions of sect. 70, (5,) in which condition it remained until said Hussey was decreed a bankrupt, unless the writing of August 10, 1900, by which the said Hussey undertook to give his daughter, Edith G. Gove, a valuable and substantial interest therein, without consideration, changed its character.

The assignment of August 10, 1900, to the daughter was fraudulent as to existing creditors. The conveyance was to his daughter, was without consideration, and given at a time when Hussey was owing a large part of the debts mentioned in his bankruptcy schedule, amounting in all to $2878.17. *Gardiner Savings Inst.* v. *Emerson,* 91 Maine, 535; *White* v. *Bolster,* 95 Maine, 458.

Even regarding the assignment of August 10, 1900, as valid and effective to accomplish the purpose its language imports, the policy would still be the property of Charles E. Hussey and assets in the hands of his trustee, under the rule laid down in *in re Slingluff*, 106 Fed. Rep. 154. "An endowment policy, payable, with accumulated profits, to the insured at the end of a specified term, but providing that in case of his death during the term, the principal sum shall be paid to a beneficiary named, has two features; primarily it is an investment for the benefit of the holder, and secondarily, a policy of life insurance for the benefit of the beneficiary. There is no joint interest between the two, but so long as the holder lives, the policy is his property, and on his bankruptcy, constitutes assets of his estate for the benefit of his creditors, like any other investment of his capital, and the title vests in his trustee, who may dispose of it in any manner by which it can be made of value to the estate."

The right of exemption has been waived. *Wyman* v. *Gay*, 90 Maine, page 36.

*Geo. F. and Leroy Haley*, for defendants.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, PEABODY, SPEAR, JJ.

STROUT, J. The defendant Hussey was decreed bankrupt on March 8, 1901. March 1, 1893, he obtained a policy of insurance upon his life, which was in force when he became bankrupt and is still in force. His wife, Lizzie L. Hussey, was the beneficiary named in it. By its terms, the amount insured was to be paid to Charles E. Hussey, or his assigns if he survived twenty years—or if he survived his wife, then to his legal representatives or assigns. But if he did not survive twenty years, and his wife survived him, then the amount was payable to her. It also contained provision for surrender at certain times according to the "cash surrender values" indorsed thereon. Lizzie L. Hussey was divorced from her husband, and afterwards, on July 10, 1900, executed an assignment of all her interest in the policy to her former husband, Charles. August 10, 1900, Charles assigned to his daughter, Edith G. Gove, one of the

defendants, provided she be living at the time of his death, all his right to the sum insured "in event of death," but not assigning the endowment to her if he survived twenty years.

Plaintiff, as trustee in bankruptcy of Charles, claims to hold this policy, or its surrender value at the date of bankruptcy. Whether it is to be regarded as assets in the hands of the plaintiff, is the question presented.

By R. S., of Maine, c. 75, § 10, "money received for insurance on his life, deducting the premiums paid therefor within three years with interest, does not constitute a part of his estate for payment of debts . . . . when the intestate leaves a widow or issue," but descends to the widow and issue, or if no widow to the issue. "It may be disposed of by will, even if the estate is insolvent." Charles has a daughter, Mrs. Gove.

By R. S., of Maine, c. 49, § 94, "life and accident policies, and the money due thereon are exempt from attachment, and from all claims of creditors during the life of the insured, when the annual cash premium paid does not exceed one hundred and fifty dollars, etc."

Under these statutes it is beyond question, that if the policy is within them it could not be reached by creditors under the laws of this State.

By the bankrupt act of 1898, c. 541, § 6, it is provided that "this act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the State laws in force at the time of the filing of the petition in the State wherever they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition." This provision pervades and qualifies the whole act and is to be read into all its subsequent language. It is equivalent to saying that, whatever general expressions may appear in other parts of the statute, they must all be taken subject to this unqualified expression.

By section 70 of the same act it is provided that the trustee of the bankrupt shall "be vested by operation of law with the title of the bankrupt . . . . except in so far as it is to property which is

exempt," to various enumerated kinds of property, and, fifth, to "property which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him." If this clause five should be given literal effect, it would destroy all exemptions specially provided for in section six of the act. It must be construed in the light of the term in the earlier part of the same section, which excepts exempted property, manifestly referring to the exemption in section six.

This construction harmonizes section 6 and that part of section 70 with the evident legislative intention. There immediately follows in section 70 the language "provided that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate or personal representatives, he may within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the policy, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceeding, otherwise the policy shall pass to the trustee as assets."

The policy in this case had a surrender value to Charles, at each successive five years after its date. The plaintiff claims under the recited proviso.

Arbitrary rules for the construction of statutes afford slender aid in their consideration, and not infrequently mislead. To so construe the different provisions of a statute so as to produce a harmonious whole, in accord with the apparent legislative intent, is the object aimed at, and to be accomplished, if it can be done consistently with its terms, although detached sentences or paragraphs may indicate a different view.

In this statute, in section six, there is expressly exempted from the operation of the act, the exemptions given by the State. Later in section 70, which defines the property passing to the trustee, it is prefaced with the statement, "except in so far as it is to property which is exempt", and then follows, in the same section, all subject to the exemption, the property which he might have conveyed, and the provisions as to life policies. On reading the section, the intention

appears to be clear, that all its terms apply only to property not exempt by the State laws.

Instead of enlarging the rights to property in the trustee, this proviso further qualifies and limits them. But for it, in states where life policies are not exempted, and no beneficiary is named, the entire interest in the insurance would pass to the trustee. But the proviso limits the amount to go to the creditors to the "surrender value," reserving to the bankrupt an interest he would not otherwise retain. The proviso is in the interest of the bankrupt, and not in that of his creditors; for whether payable to his estate at death, or as an endowment to the insured after a definite period of years, only its cash surrender value at the time of bankruptcy is secured to the creditors, and the ultimate fund, if an endowment policy, is retained by the bankrupt, and if an ordinary life policy, to the beneficiary, if any— if not, to the heirs of the insured.

This construction of the statute will give effect to the apparent intention of Congress, and harmonize all sections of the act, and escape an otherwise unavoidable conflict between sections 6 and 70.

We do not find that this question has been passed upon by the Supreme Court of the United States, but there are several decisions of the District and Circuit Courts which are not in harmony. These decisions of learned judges are entitled to great respect, but are not conclusive upon this court.

In *re Lange*, 91 Fed. Rep. 361, where the insurance was by an endowment policy, which by the laws of Iowa was exempt, the District Court held that the surrender value went to the trustee, but in this case we think sufficient weight was not given to the language of the first part of section 70, or the imperative language of section 6. Section 70 in defining the property passing to the trustee, says the title of the bankrupt passes to the trustee, "except so far as it is to property which is exempt", (which exemption is defined in section 6) to all the then following enumerated species of property. The opinion also treats the proviso as to insurance policies, as an independent, positive and controlling enactment, unaffected by the exception which applies to all the after enumerated property. This case, and that of *Steele*, 98 Fed. Rep. 78, were reversed by the Circuit

Court in *Steele* v. *Buel*, 104 Fed. Rep. 968. In *re Boardman*, 103 Fed. Rep. 783, the policy was an endowment one. The case arose on petition of the bankrupt for an order upon the trustee who had possession of the policy to deliver it to him. In denying the petition upon the ground that the trustee had some interest in the policy, the district judge cited with approval *Diack's* case, 100 Fed. Rep. 770. In that case, the policy was an endowment, payable to the assured, if he survived fifteen years, "or should he die before, then to his wife, if living, if not, then to" the insured's personal representatives. For some years Mrs. Diack paid the premiums, and it was held that "as the trustee cannot require Mrs. Diack, either to accept a paid-up policy, or to suffer the policy to lapse and thus obtain immediate payment of the surrender value, the bankrupt should be required, unless Mrs. Diack shall elect to surrender, to execute an assignment to the trustee of his interest in the surrender value of the policy, which "should be made payable out of the proceeds of the policy when it matures, or whenever sooner paid." The case does not discuss the construction of the bankrupt act which is presented to us.

In *re Scheld*, 104 Fed. Rep. 870, 52 L. R. A. 188, in the ninth circuit, it was held that policies payable to the bankrupt or his personal representatives, passed to the trustee under section 70, but that policies payable to wife or children did not pass.

In *re Slingluff*, 106 Fed. Rep. 154, a case in Maryland, in which State a policy like that before the court was not exempt by the State law—it was rightly held that it passed to the trustee.

In *re Holden*, 113 Fed. Rep. 142, the court held to the doctrine of the Scheld case.

In *re Welling*, 113 Fed. Rep. 189, policies of insurance were not exempt by the laws of the State. The case therefore is not an authority upon the question under consideration.

In *Steele* v. *Buel*, 104 Fed. Rep. 968, three Circuit judges sitting, Caldwell, Circuit judge, delivered an able and well considered opinion in which is adopted the same construction of the statute we have given it. We do not see how any other construction can obtain, without doing violence to the language of the act and the evident intention of Congress.

Plaintiff claims that the assignment to Mrs. Gove is invalid, as a fraud against creditors. This contention cannot be sustained. The policy is a combination life and endowment. When issued the amount insured was payable to Hussey, the insured, if he survived twenty years; but if not, then it was payable to his then wife Lizzie. When she assigned her interest to Mr. Hussey, the policy then became payable to him, if he survived the endowment period, otherwise to his personal representatives or assigns. The policy authorized an assignment, and the company's promise to pay was to the parties named, or assigns. The assignment to Mrs. Gove is not of the whole policy, as it might have been, but only of the right to the fund, if the assured shall die before the endowment period of twenty years. If he survives that, he receives the money, and Mrs. Gove gets nothing. The right thus assigned had no surrender value— that remained to the assured for the endowment period,—it had no value as to creditors, for it was absolutely exempt from their claims, under the bankrupt act and the State statute. It was entirely competent for Mr. Hussey to make that assignment, practically a designation of a new beneficiary—his creditors are not harmed and cannot complain—but after the assignment to Mrs. Gove, and filing with the company a copy, as required by it, she became the rightful and legal owner of the insurance, if Mr. Hussey shall not survive the endowment period. If he does, she takes nothing. Even as heir the result would be the same, or it could have been accomplished by will of Mr. Hussey.

The contract of the insurance company was "at the end of the fifth and every subsequent fifth year from date of issue, the cash value specified in table of cash surrender values indorsed hereon will be paid for this policy, provided it shall be in force under its original conditions, and is legally surrendered thereafter to the home office within thirty days from the close of such period." The date of the policy was March 1, 1893. The first surrender period was on March 1, 1898, but the policy was not then surrendered, and that right to surrender was lost. The next period will arrive March 1, 1903, but the bankruptcy occurred March 8, 1901. At that date the policy had no surrender value which the company was bound to

recognize. The parties have agreed that notwithstanding this, it has been the custom of the company to allow a surrender at any time. The surrender value referred to in section 70 of the bankrupt act refers only to the contract right of surrender, and not to the result of a negotiation, or act of grace. If the company has been in the habit of accepting a surrender at other than the contract periods, it is not bound to continue the practice. What it may have done as an act of grace, it is under no obligation to continue. It may at any time fall back upon its contract. Under that the policy had no surrender value at the date of the bankruptcy. *In re Welling*, 113 Fed. Rep. 192.

But if this were not so, the transfer to Mrs. Gove of the insurance, in the event of the death of the assured before the expiration of the endowment period, invested her with the right of an assignee, and entitled her, under the terms of the policy, to receive the amount insured, if the death of the assured occurred before the end of the endowment period. All the cases hold that section 70 does not include policies payable to a wife or kindred of the assured, but only applies to policies payable to the assured or his personal representatives. After the assignment to Mrs. Gove, the policy, in the event of death within the endowment period, was payable to her, the daughter. The bill must be dismissed.

*So ordered.*